1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JESSICA MARIE LARA,                    No. 2:22-cv-1553 DB

12              Plaintiff,

13        v.                                ORDER

14   MARTIN O'MALLEY, Commissioner of
     Social Security,[1]
15

16              Defendant.

17

18        This social security action was submitted to the court without oral argument for ruling on

19   plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2]

20   Plaintiff argues that the ALJ's treatment of the medical opinion evidence constituted error.  For

21   ////

22   ////

23   ───────────────

24   [1] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023.  See https://blog.ssa.gov/martin-j-omalley-sworn-in-as-commissioner-of-social-
25   security-administration/ (last visited by the court on February 21, 2024).  Accordingly, Martin O'Malley is substituted in as the defendant in this action.  See 42 U.S.C. § 405(g) (referring to the
26   "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").
27
28   [2] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c).  (See ECF No. 9.)

1

the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings.

## PROCEDURAL BACKGROUND

In December of 2016, plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act") alleging disability beginning on October 22, 2016. (Transcript ("Tr.") at 183.) Plaintiff's alleged impairments included depression, anxiety, suicidal ideations, auditory hallucinations, and a head injury. (Id. at 188.) Plaintiff's application was denied initially, (id. at 89-93), and upon reconsideration. (Id. at 102-06.)

Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 27, 2018. (Id. at 29-54, 107.) In a decision issued on October 24, 2018, the ALJ found that plaintiff was not disabled. (Id. at 22-23.) On June 25, 2019, the Appeals Council denied plaintiff's request for review of the ALJ's October 24, 2018 decision. (Id. at 1-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this court August 9, 2019. (Id. at 603.) On September 18, 2020, this court granted plaintiff's motion for summary judgment and remanded the matter for further proceedings. (Id. at 619.)

On February 22, 2021, another hearing was held before an ALJ. (Id. at 576-600.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 576-80.) In a decision issued on March 23, 2021, the ALJ again found that plaintiff was not disabled. (Id. at 570.) The ALJ entered the following findings:

> 1. The claimant has not engaged in substantial gainful activity since December 8, 2016, the application date (20 CFR 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairments: status post brain aneurysm, headaches, major depressive disorder, obesity, and lumbar facet arthropathy at L5-S1 on the right (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except she can lift 50 pounds occasionally and 25 pounds frequently, and stand, walk or sit six hours each in an eight-hour workday with normal breaks. The claimant is capable of noncomplex and routine tasks. She is able to maintain concentration, persistence and pace for two-hour increments with normal breaks over the course of an eight-hour workday and 40-hour workweek. She can adapt to routine changes in the workplace.
>
> 5. The claimant is capable of performing past relevant work as a garment sorter (222.687-014). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).
>
> 6. The claimant has not been under a disability, as defined in the Social Security Act, since December 8, 2016, the date the application was filed (20 CFR 416.920(g)).

(Id. at 558-570.)

On June 30, 2022, the Appeals Council denied plaintiff's request for review of the ALJ's March 23, 2021 decision. (Id. at 532-34.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on September 2, 2022. (ECF No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff's pending motion asserts that the ALJ's treatment of the medical opinion evidence constituted error. (Pl.'s MSJ (ECF No. 13) at 12-16.[3]) For Social Security disability cases filed prior to March 27, 2017, the weight to be given to medical opinions depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals.[4]

---

[3] Page number citations such as this one, are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[4] Effective March 27, 2017, Revisions to Rules Regarding the Evaluation of Medical Evidence went into effect. Plaintiff's application, however, was filed prior to March 27, 2017. "For claims filed before March 27, 2017, but not decided until after that date . . . the rules listed in 20 C.F.R. §§ 404.1527(c), 416.927(c) apply." Edinger v. Saul, 432 F.Supp.3d 516, 530 (E.D. Pa. 2020).

1    Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule,

2    more weight should be given to the opinion of a treating source than to the opinion of doctors

3    who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is

4    employed to cure and has a greater opportunity to know and observe the patient as an individual.

5    Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063

6    (9th Cir. 1990).

7         The uncontradicted opinion of a treating or examining physician may be rejected only for

8    clear and convincing reasons, while the opinion of a treating or examining physician that is

9    controverted by another doctor may be rejected only for specific and legitimate reasons supported

10   by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining

11   physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion

12   of either an examining physician or a treating physician." (Id. at 831.) Finally, although a

13   treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not

14   accept the opinion of any physician, including a treating physician, if that opinion is brief,

15   conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661,

16   671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir.

17   2009)).

18        Here, plaintiff challenges the ALJ's treatment of the examining opinion offered by Dr.

19   Lauri Stenbeck. (Pl.'s MSJ (ECF No. 13) at 12-16.) In this regard, on February 14, 2017, Dr.

20   Stenbeck performed a "comprehensive psychological evaluation" of the plaintiff "at the request

21   of the Department of Social Services." (Tr. at 477.) Dr. Stenbeck's examination included a

22   review of plaintiff's medical records, a complete psychological evaluation, as well as the

23   Wechsler Adult Intelligence Scale-4th edition, Wechsler Memory Scale-4th edition, and the Trail

24   Making Test. (Id.)

25        In summarizing plaintiff's cognitive functioning test results, Dr. Stenbeck explained:

26             Test results and adaptive functioning suggest that the Claimant has
               extremely low to borderline intellectual functioning with
27             commensurate memory abilities. Test results indicated that claimant
               has some underlying cognitive impairments secondary to suffering a
28             brain aneurysm as she showed significant difficulty tracking during

trails. These intellectual limitations would suggest that she would experience difficulty with complex work tasks including carrying out multistep tasks without super-vision and without having these tasks broken down into manageable single step processes.

(Id. at 484.) Dr. Stenbeck also noted that plaintiff was "likely to have reduced capacity to deal with stressful environments due to limited coping skills." (Id.)

The ALJ discussed Dr. Stenbeck's opinion, acknowledging that Dr. Stenbeck found that plaintiff would be "moderately limited in her ability to perform detailed and complex tasks" as well as "moderately limited in her ability to perform work activities on a consistent basis and without special or additional supervision." (Id. at 567.) The ALJ also acknowledged that Dr. Stenbeck opined the plaintiff would be "moderately-to-markedly limited in her ability to complete a normal workday and workweek without interruptions" and would be "moderately limited in her ability to deal with the usual stresses encountered in competitive work environments." (Id.)

With respect to the weight given to Dr. Stenbeck's opinion the ALJ stated:

> For the same reasons discussed regarding the opinions of Drs. Schwartz and Hawkins, I give great weight to Dr. Stenbeck's opinion regarding the claimant's ability to perform simple and repetitive tasks. In considering the claimant's mostly low average cognitive and memory test scores during the neuropsychological evaluation with Dr. Hannon in conjunction with Dr. Fuller's clinical observations, including adequate-to-good attention and concentration, I give little weight to Dr. Stenbeck's opinion pertaining to the claimant's ability to perform work activities on a consistent basis and complete a normal workday/workweek. Based on the claimant's largely cooperative behavior and appropriate affect, I give great weight to Dr. Stenbeck's opinion pertaining to the claimant's ability to interact with others. Based on the claimant's mostly low average cognitive and memory scores during the neuropsychological evaluation with Dr. Hannon and Dr. Fuller's longitudinal clinical observations that the claimant's insight and judgment are adequate, I give partial weight to Dr. Stenbeck's opinion pertaining to the claimant's ability to deal with the usual stresses encountered in competitive work environments. In sum, I give partial weight to Dr. Stenbeck's opinion.

(Tr. at 25.)

The ALJ's analysis vague, conclusory, and confusing. In this regard, the ALJ elected to give "little weight" to Dr. Stenbeck's opinion that plaintiff was moderately limited in her ability

6

1 to perform work activities on a consistent basis and complete a normal workday/workweek. (Id.)
2 The only reasoning offered in support of this determination is the assertion that it was based on
3 plaintiff's "mostly low average cognitive and memory test scores during the neuropsychological
4 evaluation with Dr. Hannon in conjunction with Dr. Fuller's clinical observations, including
5 adequate-to-good attention and concentration[.]" (Id. at 24-25.) How evidence of low cognitive
6 and memory test scores and observed adequate-to-good attention and concentration supports the
7 decision to give little weight to Dr. Stenbeck's opinion that plaintiff would be moderately limited
8 in her ability to perform work activities consistently or complete a normal workday/workweek is
9 entirely unclear.

10 Likewise, the ALJ elected to "give partial weight" to Dr. Stenbeck's opinion that plaintiff
11 was moderately limited in the ability to deal with the usual stresses encountered in competitive
12 work environment. (Id. at 568.) What exactly constitutes "partial weight" is not explained.
13 Moreover, to support this finding the ALJ refers to the "claimant's mostly low average cognitive
14 and memory scores during the neuropsychological evaluation with Dr. Hannon and Dr. Fuller's
15 longitudinal clinical observations that the claimant's insight and judgment are adequate[.]" (Id.)
16 Again, why that evidence supports the ALJ decision to give less than full weight to Dr.
17 Stenbeck's opined limitation is entirely unclear.

18 Dr. Stenbeck also found that plaintiff's "limited coping skills" would impair plaintiff's
19 ability to deal with the usual stresses of competitive work. (Id. at 485.) The ALJ did not address
20 that aspect of Dr. Stenbeck's opinion. And while the ALJ purported to give some portions of Dr.
21 Stenbeck's opinion "great weight," and other portions "little weight," the ALJ ultimately
22 concluded the analysis by stating "In sum, I give partial weight to Sr. Stenbeck's opinion." (Id. at
23 568.)

24 While an ALJ is not required to explain a decision with "ideal clarity . . . we still demand
25 that the agency set forth the reasoning behind its decisions in a way that allows for meaningful
26 review. A clear statement of the agency's reasoning is necessary because we can affirm the
27 agency's decision to deny benefits only on the grounds invoked by the agency. Brown-Hunter v.
28 Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations and quotations omitted); see also Burrell v.

7

1  Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) ("Our decisions make clear that we may not take a
2  general finding . . . and comb the administrative record to find specific conflicts.").
3        Moreover, "[t]his court is neither required nor inclined to scour the record in an attempt to
4  divine the specific basis for an ALJ's opinion." Romo v. Colvin, 83 F.Supp.3d 1116, 1121 n.4
5  (D. Colo. 2015); see also U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like
6  pigs, hunting for truffles buried in briefs."); Morgan v. Colvin, 68 F.Supp.3d 1351, 1358 n.6 (D.
7  Colo. 2014) ("I continue to criticize the Commissioner for what appears to be a trend of relying
8  on sweeping, non-specific citations to the record in support of her decision.").
9        The Ninth Circuit has explained:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

14  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d
15  1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary
16  support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599,
17  602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do
18  not suffice).
19        Here, the ALJ's analysis does not even clearly assert that Dr. Stenbeck's opinion is not
20  supported by objective findings. Instead, the ALJ simply offers vague, conclusory, and confusing
21  assertions. Under these circumstances the court cannot find that the ALJ provided a specific and
22  legitimate reason supported by substantial evidence in the record for rejecting Dr. Stenbeck's
23  opinion. Plaintiff is, therefore, entitled to summary judgment on the claim that the ALJ's
24  treatment of the medical opinion evidence constituted error.
25  ////
26  ////
27  ////
28  ////

**CONCLUSION**

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, plaintiff has asked that this matter be remanded for further proceedings. (Pl.'s MSJ (ECF No. 13) at 16.) That request will be granted.[5]

////

////

---

[5] The court is troubled by the repeated errors by the Commissioner and the delay suffered by plaintiff in obtaining a legally sufficient analysis of plaintiff's claim. Should this matter come back before the court the court may not be inclined to remand for further proceedings. See, e.g., Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility.").

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 28) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for further proceedings consistent with the order; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: February 26, 2024          /s/ DEBORAH BARNES
                                  UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\lara1553.ord